JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Timothy McCormick that affirmed the denial by appellee Orange Village Council of a zoning variance on eight acres of property leased by appellant John J. Prochazka upon which he sought to place a residential subdivision. Prochazka asserts that, while the zoning code required a minimum of ten acres to accommodate the proposal, the Council unreasonably denied the variance, and it was an abuse of discretion to affirm the denial. We do not agree and affirm.
{¶ 2} Prochazka's parents purchased the 10.6 acre property located on the north side of Harvard Road, east of Brainard Road, in 1989. The property is about two hundred and two feet wide and two thousand two hundred ninety feet deep with 2.6 acres fronting Harvard zoned U-1 and the 8 acres beyond zoned U-1A. Land with the U-1A classification could be developed only for residential subdivisions, while the U-1 classification allows uses beyond the single-family home restriction placed on U-1A property. While it is unknown when he began to rent the property, on November 1, 1999, Prochazka, claiming to be the owner,[1] submitted a variance application and proposed subdivision plan to the Orange Village Planning and Zoning Commission. The same variance request, apparently accompanied by a different subdivision plan, had been previously submitted by his parents and denied by the Orange Village Council on November 11, 1998.
{¶ 3} The property, according to testimony, is the last piece of undeveloped property in Orange Village bearing the U-1A classification and abuts a residential subdivision known as Orangewood. The property, zoned U-1A since 1971, had not been utilized in the Orangewood subdivision and appears to have been either mistakenly zoned U-1A or allowed to retain that classification after not being utilized in that development. When Prochazka's parents bought the property, they believed it was zoned entirely U-1 and Prochazka shared that belief when he acquired the leasehold. The 5,040 square-foot pole barn on the property was built under the conclusion that the entire parcel was U-1, because an accessory building of that size would not have been allowed in a U-1A district and would not have been allowed on a U-1 parcel of only 2.6 acres.[2]
{¶ 4} Although Prochazka wants to develop only eight acres of land classified as U-1A, Orange Village ordinances require any U-1A subdivision to be at least ten acres and, therefore, he could not use the property for a subdivision unless granted a variance. The parcel is a "bowling alley" type lot with the portion of the property zoned U-1 extending 540 feet north from Harvard Road, and containing a single-family residence and the storage barn. The remaining property, zoned U-1A at the time of the application, extends northward for some 1,760 feet to the border between Orange Village and Woodmere Village. To its west are the backyards of homes facing Brainard Road, while on the east are the backyards of homes facing Orangewood Drive and Wild Cherry Trail.
{¶ 5} The proposed development contemplated a two thousand foot long cul-de-sac along the western edge of the property with homes on the east side only, thereby creating a "double frontage" for the homes that now face Brainard Road. The Brainard Road homes, however, currently have wooded back yards and would be at least two hundred feet from the new road. The proposal also showed that if the area variance was granted, development of the individual lots would also require setback variances, and three of the proposed lots contained wetland areas that would require accommodation. The proposed cul-de-sac also was longer than allowed by Orange Codified Ordinance ("O.C.O.") 1127.03(e).
{¶ 6} Although Prochazka's application was filed when the northern eight acres of the property were zoned U-1A, a village referendum subsequently rezoned it U-1, and that change opened up previously unavailable development opportunities. While the U-1A zoning classification allowed only residential subdivisions, U-1 zoning allows residences on lots of 1.5 acres or more, as well as public parks, playgrounds, libraries, churches and houses of worship, schools, water towers and/or reservoirs, farms, noncommercial, greenhouses, nurseries, truck gardens, country clubs and golf courses, community center, and village hall.[3] Moreover, although the parties have not clarified the point for us, the Planning Commission's debate on the proposal suggested[4] that the U-1 zoning would still allow Prochazka to subdivide the property, but would allow a smaller number of lots because the 1.5 acre residence lot size for U-1 property is three times larger than that in a U-1A subdivision.[5] Much of the argument before the Planning Commission and Council appears to have concerned the number of lots that should be developed on the property.
{¶ 7} After a hearing, the Planning Commission voted to recommend denial of the proposed variance and development, and the issue went to the Orange Village Council, which also denied the variance after hearings that included testimony from Prochazka and area residents, as well as the engineer that designed the proposal, a wetlands expert, and the Orange Village Planner. Area residents voiced objection to the proposal, while the engineer, wetlands expert, and the village planner testified that the project was feasible, but conceded the concerns about double frontage, wetlands, lot size, and additional variance requirements.
{¶ 8} The Council voted to deny the requested variance, finding that it was barred by res judicata and that it was unwarranted on the merits, citing the double frontage, wetland, and setback difficulties that accompanied the proposal. The Council also found that Prochazka had alternative uses for the property. On appeal to the common pleas court, the judge denied his motion to present additional evidence under R.C.2506.03, and the parties argued the appeal on the record made before the Planning Commission and the Council. The judge affirmed the Council's decision, finding that its ruling was supported by the evidence and was not illegal, arbitrary, or unreasonable.
{¶ 9} Prochazka's first assignment of error states:
 {¶ 10} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S APPEAL OF THE DECISION OF THE ORANGE VILLAGE COUNCIL IN DENYING APPELLANT'S REQUEST FOR AN AREA VARIANCE BY RULING THAT APPELLANT'S VARIANCE REQUEST WAS BARRED BY THE DOCTRINE OF RES JUDICATA WHEN THE RULES AND PROCEDURES OF THE ORANGE VILLAGE CODE MANDATE THAT THE ORANGE VILLAGE COUNCIL RECONSIDER APPELLANT'S REQUEST.
{¶ 11} In an appeal of a zoning decision to the court of common pleas, the judge reviews the decision under R.C. 2506.04. In addition to reviewing questions of law, the judge has the duty and authority to determine whether the administrative body's decision is supported by the weight of the evidence.[6] Our review of the judge's decision is limited to questions of law, which includes abuse of discretion in applying law to the facts in the record.[7] We do not have authority to weigh the evidence, but only to determine whether it is sufficient as a matter of law.[8] In order to reverse the judge's affirmance, we must be able to say, as a matter of law, that the Council's ruling cannot stand.
{¶ 12} Prochazka challenges the Council's decision that his application was barred by res judicata and correctly points out that O.C.O. 1142.06(j) allows him to re-apply for a variance after six months, even if the request is identical to one previously denied and even if he can point to no change in circumstances between the applications. Although correct in arguing that the Council was unjustified in finding his application barred, this assignment fails because the record shows that his variance request and proposed development were fully heard on their merits, and the Council addressed and denied the request on its merits in its written decision.
{¶ 13} The judge's decision did not limit the affirmance to only the res judicata finding but also affirmed the judgment on the merits. Because the Council heard and decided the request on its merits, we can review that portion of the decision and affirm or reverse on the merits. The res judicata ruling, while erroneous, is an alternative holding of no effect. This assignment is overruled.
{¶ 14} The second assignment states:
 {¶ 15} II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S APPEAL OF THE DECISION OF THE ORANGE VILLAGE COUNCIL IN DENYING APPELLANT'S REQUEST FOR AN AREA VARIANCE BY RULING THAT APPELLANT DID NOT ENCOUNTER PRACTICAL DIFFICULTIES ENTITLING APPELLANT TO AN AREA VARIANCE WHEN THE PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE DEMONSTRATED THAT APPELLANT INDEED ENCOUNTERED SUCH DIFFICULTIES.
{¶ 16} Because this case concerns an area variance, the standards for granting Prochazka's request are more liberal than those applied to use variances. Instead of the "unnecessary hardship" standard applied to use variances, he must show that the Council's decision was arbitrary or unreasonable by establishing that his use of the property is subject to "practical difficulties."[9] In Duncan v. Village of Middlefield,[10]
the Ohio Supreme Court refined this standard and set forth a number of factors relevant to determining the existence of practical difficulties, including, but not limited to:
 {¶ 17} (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.[11]
{¶ 18} Prochazka claims that the evidence favored his position on nearly all of the factors and that it was an abuse of discretion to fail to reverse the Council's ruling. We cannot say on the evidence presented, however, that the Council's decision was arbitrary or unreasonable as a matter of law.
{¶ 19} Prochazka places great emphasis on the first factor and argues that the property zoned U-1A could not be used for any purpose other than a residential subdivision while bearing that classification, and claims he was denied any use of the property while it was so zoned. We agree that he would be denied the use of his property if the Council denied him a variance from the ten-acre requirement while refusing to allow his eight acres to be put to any other use. However, the large storage barn indicated the Council was willing to allow other uses of the property before it was rezoned, the property has been rezoned for U-1 uses, and Prochazka presented no evidence that he cannot reasonably use the property under its present classification. Therefore, his argument concerning the U-1A classification is out of place under the circumstances — he cannot claim practical difficulties by positing a hypothetical Council unwilling to accommodate him when the facts show a Council willing to consider other uses and, in fact, a current zoning classification that allows numerous other uses. Among the factors mentioned above, the Council had reasons for finding that Prochazka had other reasonable uses of his property and that his U-1A predicament could be addressed through means other than the variance.
{¶ 20} Prochazka's arguments on the other factors also fail because the record shows enough evidence from which the Council could reasonably have denied the variance. There was evidence that the wetlands rendered some of the lots in the proposed subdivision of questionable value, that the proposed development would adversely affect surrounding properties, that Prochazka did not acquire his interest in the property with the expectation or hope of placing a U-1A subdivision on it, and that the two acre difference (from ten acres to eight) was a substantial variance, especially where the parcel at issue was a narrow strip of land with limited development options. The Orange Village Planner stated before the Planning Commission that the ten acre requirement was enacted because it was considered the minimum area necessary for a subdivision.
{¶ 21} Moreover, the planner also stated that an eight acre parcel would never receive approval as a use variance, and the parcel here was under consideration only because it had been mistakenly zoned U-1A in the first place or had mistakenly retained that classification after not being developed as part of the original Orangewood subdivision. This factor, while it does not precisely fit any one of the factors listed inDuncan, is nonetheless relevant to the determination and was appropriately considered by the Council.
{¶ 22} On the record before us, we cannot find that the judge abused his discretion in affirming the Council's ruling. The evidence was sufficient to sustain the Council's decision, and we are not called upon to address its weight. Nor do we find that the judge misapplied the law to the facts on the record or otherwise abused his discretion. The second assignment of error is overruled.
{¶ 23} The third assignment states:
 {¶ 24} III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR ADDITIONAL EVIDENCE WHEN APPELLANT ESTABLISHED THE CRITERIA NECESSITATING THE TAKING OF ADDITIONAL EVIDENCE BY THE TRIAL COURT PURSUANT TO REVISED CODE SECTION 2506.03.
{¶ 25} Prochazka claims that one of the Council members asked unfair questions of a witness and he was denied the right, under R.C.2506.03, to present additional evidence by redirect examination of that witness. Moreover, he asserts that the Council member, Herbert L. Braverman, lives in the Orangewood subdivision and had a conflict of interest because his wife had led efforts against his proposed adjacent development. We note, however, that Prochazka has not claimed that Council bias tainted its decision or that Braverman should have been disqualified,[12] but argues bias only to support his motion for additional evidence.
{¶ 26} R.C. 2506.03(A)(2) allows the common pleas judge to hear additional evidence when the appellant was not permitted to present evidence and arguments in support of his position, or was deprived of the opportunity to examine or cross-examine witnesses. At the hearing before the Council, William Dreimiller, the engineer who designed the proposed subdivision, testified that he believed the plans made reasonable and effective use of the property and that the proposed street would alleviate backyard and basement flooding currently experienced by contiguous Orangewood homeowners. After his direct testimony, Braverman asked Dreimiller whether the road would have any beneficial effect, assuming that the Orangewood residents were not experiencing drainage problems. Prochazka objected, stated that Orangewood residents had already testified to such problems and that Braverman's question was misleading and misstated the facts in evidence. The objection was overruled, Dreimiller answered the question and Prochazka claims he did not attempt to ask follow-up questions because he had been informed that no redirect was allowed from Council members' questions.
{¶ 27} We are not convinced that Prochazka was denied the right to present evidence, examine witnesses, and argue his case. He questioned Dreimiller on direct examination and again on redirect after cross-examination by the village attorney and, in his closing remarks to the Council, he argued that Braverman's questioning was contrary to the evidence in the record. The rule prohibiting redirect after questions from Council members appears to have been a standard policy, and he has not shown that it was arbitrarily imposed to prevent him from refuting the implications of Braverman's questioning. Mere allegations about Braverman's bias do not create a need for further evidence because the Council had enough evidence concerning the drainage issues to determine whether the road would benefit Orangewood residents. There must be a showing that such alleged bias prevented Prochazka from making his case, and we do not find it here.[13]
{¶ 28} Moreover, even if a serious drainage problem was shown to exist and the Council mistakenly believed it did not, that misapprehension would not serve as a basis for reversal of its decision. Water runoff, if shown, presumably could be resolved through simpler means than development of an intervening housing subdivision. The Council's decision did not reflect concerns based on drainage to or from other property but, among other things, expressed doubt over whether wetland impact and drainage could be properly addressed within the proposed development. Prochazka's variance application would have to stand or fall for reasons other than the drainage issue on which he wished to present more evidence. Therefore, even if evidence was unfairly excluded, he was not prejudiced.[14] This assignment of error is overruled.
{¶ 29} Judgment affirmed.
{¶ 30} It is ordered that the appellees recover from appellant their costs herein taxed.
{¶ 31} This court finds there were reasonable grounds for this appeal.
{¶ 32} It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
{¶ 33} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., and ANN DYKE, J., CONCUR.
[1] The Village has not challenged Prochazka's standing, and we decline to address it. See, e.g., State ex rel. Tubbs Jones v. Suster (1998),84 Ohio St.3d 70, 77, 701 N.E.2d 1002, 1008 (standing does not ordinarily raise question of subject matter jurisdiction).
[2] Orange Codified Ordinances 1148.02(g) (accessory building area must not exceed 1% of lot area).
[3] O.C.O. 1148.01(a)-(e).
[4] We do not make this finding as a matter of law, but note only that the evidence suggested that Prochazka has alternatives to U-1A development. He presented no evidence that he would be forbidden from subdividing his property under the U-1 classification.
[5] The U-1A lot requirement is 20,000 square feet, slightly less than half an acre. An acre is 43,560 square feet. A football field, including end zones, is approximately 1.3 acres.
[6] Henley v. Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142,147, 735 N.E.2d 433, 438.
[7] Id. at 147-148, 735 N.E.2d at 438.
[8] Id.; R.C. 2506.04.
[9] Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 12 OBR 26,465 N.E.2d 848, syllabus.
[10] (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692.
[11] Id., at syllabus.
[12] We also note that the affidavit in support of these allegations is insufficient; an affidavit should state admissible evidence, and the one on file provides no evidence that Braverman in fact lived in Orangewood, or that his wife actually was involved in efforts opposed to Prochazka's subdivision proposal.
[13] Kiger v. Albon (1991), 76 Ohio App.3d 301, 306, 601 N.E.2d 603,606. As noted, Prochazka has not sought any other remedy concerning Braverman's alleged conflict of interest.
[14] See, e.g., Hulligan v. Columbia Twp. Bd. of Zoning Appeals
(1978), 59 Ohio App.2d 105, 110, 13 O.O.3d 162, 392 N.E.2d 1272,1275 (admission of evidence not prejudicial where appellant's case would have failed anyway).